LYONS v. HOLMES.

1. A person of African descent, whose freedom is not traced back to a date prior to the act of 1820 (7 *Stat.* 459), cannot be presumed to have been free before the general emancipation of slaves, although reputed free for more than twenty years. A presumption cannot arise of emancipation by deed, for that act prohibited it; nor by statute, for it was contrary to the settled policy of the State. *Vinyard* v. *Passalaigue,* 2 *Strobh.* 540, recognized and followed.

2. The change of policy in this respect, since 1865, cannot be permitted to affect title to land claimed to have been transmitted through such a person before that time.

3. The admission by defendant of a deed in plaintiff's claim of title extends only to its execution, and does not admit its legal validity or the truth of its recitals.

4. A claim of title by defendant in his answer, as devisee of R., who was sole heir-at-law of S., does not estop him from contesting plaintiff's title upon the ground of the incapacity of S., as a slave (through whom plaintiff claims), to acquire and transmit property.

---

Before WITHERSPOON, J., Richland, July, 1882.

This cause has once before been before this court, and will be found reported in 11 *S. C.* at p. 429. It was an action by Jacob C. Lyons, devisee of Henry Lyons, against Bella Holmes and others, devisees of Richard Holmes, to recover the possession of a lot of land in the city of Columbia. Plaintiff claimed as devisee of Henry Lyons, who purchased from Sarah Hane, apparently a free person of color, who purchased from Guignard. Defendants claimed under the will of Richard Holmes, who was the sole heir-at-law of Sarah Hane. Sarah Hane died in 1862 or 1863, and Richard Holmes in 1870. The deed from

---

* This completes the cases of November Term, 1882.

Guignard was "admitted in evidence without proof." It recited a consideration, "to me paid by Sarah Hane, a free woman of color, of Columbia," and bore date in November, 1855. This deed was objected to only to the extent that Sarah Hane, as a slave, could take nothing under the deed and could convey nothing. The same objection was made to the deed of Hane to Lyons.

So much of the charge as is contained in the brief is stated in the opinion. Verdict for plaintiff, and defendants appealed upon the following exceptions:

1. "Because it was proved that Sarah Hane, who died some time in 1862, was a person of African descent, and there was not a particle of testimony to contradict this fact.

2. "Because this fact being proved, then, as a conclusion of law, Sarah Hane was a slave at the making of the so-called deed from her to Henry Lyons, and as such she could neither hold nor transmit real estate by deed or otherwise.

3. "Because there was not a particle of evidence (1) that Sarah Hane was emancipated by deed, according to act of 1800, at any time before the act of 1820; (2) nor that she was emancipated by act of assembly after the act of 1820; (3) nor that she had passed as a free person of color for twenty years, or any shorter period, before the act of 1820, whereby a presumption might arise of a deed of emancipation under the act of 1800; (4) nor was her pedigree established so as to show that she had descended from a free mother before the act of 1800, or 1820, or since.

4. "Because upon these facts his Honor refused to charge, when so requested, that no length of time within which Sarah Hane may have passed as a free person of color after the act of 1820 could raise the presumption of a deed of emancipation, unless it were first established that Sarah Hane passed as a free person of color before the act of 1820, thereby raising the presumption that she was emancipated by deed in the manner permitted by the act of 1800.

5. "Because, under these circumstances, his Honor permitted the so-called deed of Sarah Hane to go to the jury, when it was objected to as constituting no link in the title of Jacob C. Lyons to the property, or by which said plaintiff could connect him-

self with any grant, actual or presumptive, as he is required to do by law."

Mr. J. D. Pope, for appellant.

Mr. W. A. Clark, contra.

June 27th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiff in this action seeks to recover the possession of certain real estate in the possession of the defendants, and to make out his title relies upon evidence tending to show that both parties claim from a common source. He contends that one Sarah Hane at one time held the title of the premises in dispute, and that both parties claim under her, his being the superior claim. The defendants, on the other hand, contend that Sarah Hane was a slave, and, therefore incapable of holding or transmitting title to any one, and the real controversy in the case is as to the status of Sarah Hane.

It seems to be conceded that Sarah Hane, who died in 1862 or 1863, was a colored person of African descent, and therefore she was prima facie a slave. Act of 1740, 7 Stat. 397–8; State v. Harden, 2 Spears 152; Nelson v. Whetmore, 1 Rich. 324; Huger v. Barnwell, 5 Rich. 274; State v. Brown, 2 Spears 135; State v. Motley, 7 Rich. 334. To rebut this presumption established by statute and recognized and applied in the cases just cited, the plaintiff relies upon the fact that Sarah Hane had, for many years prior to her death, been in the enjoyment of apparent freedom and had been recognized in the community as a free person of color, and that from this it should be presumed that she had been emancipated. Under the law as it stood prior to the passage of the act of 1820 (7 Stat. 459), there is no doubt but that a colored person of African descent who had been in the enjoyment of apparent freedom and had been recognized in the community as a free person of color for the requisite period of time would be presumed to have been emancipated; because by the act of 1800 (7 Stat. 442), the mode of emancipating slaves was by deed, and such a deed, like any other, might be presumed from lapse of time, with the other necessary attendant cir-

cumstances. *Miller* v. *Reigne,* 2 *Hill* 592 ; *State* v. *Hill,* 2 *Spears* 161.

But since the passage of the act of 1820, forbidding emancipation, except by act of the legislature, a different question is presented. In face of the fact that emancipation of slaves was against the declared public policy of the State as evidenced by the repeated acts with ever-increasing stringency upon the subject, to which it is needless to refer, will an act of the legislature emancipating a slave ever be presumed ? To this question we think but one answer can be given, whether looked at in the light of reason or authority. It would seem to be an extraordinary assumption of power on the part of the judiciary, bordering on usurpation, to presume that the legislative department of the government had passed an act to effect a purpose which, by repeated legislation, it had declared to be contrary to the public policy of the State, and would amount to a presumption that the legislature had deliberately gone counter to what itself had declared to be the best interests and true policy of the State. It is unnecessary, however, to argue the question, as we think it has been conclusively settled by the case of *Vinyard* v. *Passalaigue,* 2 *Strobh.* 536, in which the precise question was discussed and decided in accordance with the view which we have indicated. See also *McCarty* v. *McCarty,* 2 *Strobh.* 6, where it was held that an act of the legislature granting a divorce, would not under any circumstances be presumed because it was against public policy in this State to grant divorces.

It is argued, however, that since the change in the policy of this State in respect to emancipation, this doctrine ought not now to be applied. We are unable to appreciate the force of this position. The question is, Did Sarah Hane ever have lawful title to the premises in dispute ? And, she having died before the change in the policy of the State took place, it is difficult to see how such change could affect her alleged title. If she lived and died as a slave, she never could have been invested with title, and no events occurring subsequent to her death could invest her with the capacity to take and transmit title to property.

It does not appear to us that there is any evidence tending to show the condition or status of Sarah Hane prior to 1820. No

witness seems to have known her until some years after that time. The witness Dinah Collins, whose recollection of her extends further back than any of the others, could not have known her until some time between the years 1825 and 1830, and most probably later. At the trial in July, 1882, she says: "I must be now going into the sixties" (whatever that may mean). "I knew her some forty or fifty years, ever since I was a girl about so high" (holding her hand up about four feet from the floor). Even if it be assumed that this witness was sixty-five years of age at the time of the trial, and that she was therefore born in 1817, she must, from her own account, have been eight or ten years of age when she first knew Sarah Hane, and therefore she could not have known her until some time in 1825 or 1827, and hence we are without any evidence as to the condition of Sarah Hane prior to 1820.

Having thus stated the law which we conceive to be applicable to the facts as gathered from the case as submitted for argument here, we will proceed to consider so much of the charge of the Circuit judge as relates to the real point in controversy. The second request to charge was in these words: "That there can be no presumption of freedom by proof of a general reputation of one being a free person of color, since the act of 1820, directing that emancipation shall be by act of the legislature only; that no such act of assembly being produced, twenty years' enjoyment of apparent freedom does not presume emancipation either by deed or by act of assembly." This request was refused and the jury were charged in general terms, "that if they were satisfied from the evidence that Sarah Hane was a free person of color, that was enough, and they must judge of the evidence. If they were satisfied from the evidence that Sarah Hane was a free person of color, her deed would be good." The exception applicable to this request was, "that his Honor refused to charge that no length of time within which Sarah Hane may have passed as a free person of color after the act of 1820, could raise the presumption of a deed of emancipation, unless it were first established that Sarah Hane passed as a free person of color before the act of 1820, thereby raising the

presumption that she was emancipated by deed in the manner permitted by the act of 1800."

From what we have said, it is clear that the defendants were entitled to have the jury charged as demanded by this request. The manifest object of the request was to have the jury instructed that the enjoyment of apparent freedom, and being regarded in the community as a free person of color since the act of 1820, constituted no evidence that the person whose status was in question was a free person of color, because these facts would not authorize the presumption of a deed of emancipation, as that mode of emancipation was no longer lawful, nor of an act of the legislature, because such an act, being contrary to public policy, could not be presumed; and when, on the contrary, the jury were told in general terms, that all that was necessary was that they should be satisfied, from the evidence, that the woman was a free person of color, without explanation of the legal bearing of the evidence, they were practically left to pass upon a question of law as well as of fact, and permitted to infer emancipation from the long enjoyment of apparent freedom after the passage of the act of 1820, which, as we have seen, the law did not permit.

The criticism of respondents' counsel, in his argument upon the phraseology of this request to charge, is not sound. The request must be construed as a whole, and not in detached portions. So construed, we think it obvious that it does not practically assert that twenty years' enjoyment of apparent freedom, whether before or after the act of 1820, or partly before and partly after said act, does not presume freedom. On the contrary, properly construed, it plainly asserts that the presumption of emancipation cannot arise from twenty years' enjoyment of apparent freedom after the act of 1820.

We do not think that the position in respondents' argument, that the defendants are estopped from denying Sarah Hane's capacity to hold and convey property, can be sustained. The grounds of estoppel relied upon are: 1. That they have admitted the deed from Guignard to Hane, in which she is described and takes as a free person of color. 2. That the defendants, in their answers to the original complaint, claim title as devisees of

Richard Holmes, who claimed as the sole heir-at-law of Sarah Hane. As to the first ground, it is very obvious that the admission only extends to the execution of the deed, and, certainly, such an admission cannot be regarded as committing the parties to an admission of its legal validity, or of the truth of any recitals which it may contain.

As to the second ground of estoppel, the pleadings are not before us, and we are, therefore, unable to say what the facts are. But even if they be as alleged, we are unable to see how the title set up by the defendant in his answer to an action like this can estop him from contesting each link in the plaintiff's chain of title. In an action to recover possession of real estate the plaintiff must stand upon the strength of his own title, and not rely upon the weakness of his adversary's. He must make out his title, and until he does so the defendant may fold his arms and close his lips.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.